[No. 20572.    Department One.    May 31, 1927.]

THE STATE OF WASHINGTON, *on the Relation of Henry Ball, Appellant,* v. S. F. RATHBUN, *as State Supervisor, Respondent.*[1]

[1] GAME (1)—COUNTIES (22½)—OFFICERS—GAME WARDENS—AP-POINTIVE POWER. The courts will not control by mandamus the discretion of the state supervisor of game under Rem. 1927 Sup., § 5931-11, providing that the county game commission shall be appointed by him on the recommendation of the board of county commissioners, in case a recommendation made be not approved by him.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered December 28, 1926, in favor of the defendant, in mandamus proceedings, tried to the court. Affirmed.

*J. A. Sorley* and *John H. Binns,* for appellant.

*The Attorney General* and *E. W. Anderson, Assistant,* for respondent.

FRENCH, J.—On October 26, 1926, there was, and at all times since has been, a vacancy on the game commission of Pierce county, Washington. On that date, the board of county commissioners passed a resolution recommending a citizen of Puyallup, in that county, for appointment to fill the vacancy. The resolution was properly communicated to the defendant Rath-

¹Reported in 256 Pac. 330.

bun, as state superintendent of game and game fish, and thereafter the defendant, assigning as his reasons therefor that the person named failed to receive his approval, refused to make the appointment recommended. No other recommendation has been made, and the vacancy has not been filled, and early in December, 1926, this mandamus proceeding was commenced in the superior court for Thurston county.

[1] The question involved is whether the duty of the supervisor with respect to the appointment of county game commissioners is wholly ministerial, so that he is legally bound to appoint the individual recommended by the board of county commissioners, or whether he has discretion to approve or disapprove, as he sees fit, the recommendation submitted, and if he disapproves it call for further recommendations.

The portion of the statute, so far as the same seems to be applicable to this case, is found in § 11, ch. 178, Laws of Extraordinary Session of 1925, p. 498, which reads:

"A county game commission consisting of three residents of each county in the state is hereby created. The county commissioners may, where practical, recommend a game commissioner from each county commissioner's district.

"The county game commission shall be appointed by the supervisor of game and game fish on the recommendation of the board of county commissioners of each county, but in case the county commissioners fail to recommend such county game commissioners, for appointment upon notice of the supervisor of game and game fish within ten days after written notice so to do, then and in that event the supervisor of game and game fish may appoint such commissioners." Rem. 1927 Sup., § 5931-11.

In so far as the power of appointment is concerned, this act is substantially the same as the prior law en-

acted in 1913, the only difference being that under the Laws of 1913, p. 356 [Rem. Comp. Stat., § 5931], there were two state officials whose duty it was to appoint,—the chief game warden, and the chief deputy,—whose territorial jurisdictions were limited respectively to western and eastern Washington. This power to appoint is now lodged in the state supervisor of game and game fish.

In the case of *State ex rel. Lopas v. Shagren,* 91 Wash. 48, 157 Pac. 31, construing the act of 1913, p. 356, this court said:

"From these references to the statute, it will be seen that the members of the game commission are appointed by state officers, and that the state game wardens have supervision and control over the county game wardens, and may transfer them on official business 'from one county to another.' . . . There are provisions in the act other than those mentioned which would seem to indicate that it was the legislative intent to create county offices. There are also provisions in the act not referred to which would lend support to the view that it was not the intention of the legislature to create county offices. When all of the terms of the act are considered, it seems reasonably plain to us that the legislature did not intend that the game commissioners and the game wardens of the various counties should be county officers. The legislature must have had in mind the constitutional provision requiring county officers to be elected, and it is reasonable to presume that it did not intend to violate this provision of the constitution. The fact that the state game wardens have the power to appoint and the power to remove and the right to transfer the county game wardens from one county to another, would indicate that the legislative thought was that the offices created by the act were not county offices."

In the case of *State ex rel. Snodgrass v. Savage,* 47 Wash. 701, 92 Pac. 409, this court held unconstitutional the original game code (Laws of 1905, ch. 172, p. 349

[Rem. Comp. Stat., § 5857]), because it authorized the county commissioners to appoint county game wardens.

Primary supervision and control of the state's game is vested in the state supervisor of game and game fish, and in order to facilitate administration, certain other state officers, with limited powers and jurisdiction, namely, county game commissioners and county game wardens, were provided for, and in the selection and appointment of these secondary officers the legislature gave the counties, through their authorized representatives, the power to recommend. This power is to nominate, and not to appoint. This has been the uniform executive construction since the act of 1913, covering a period of some fourteen years. An executive construction is accepted generally by the courts as persuasive where the legislature has silently acquiesced in such construction by failing to amend the particular act. *State ex rel. Cowles v. Schively,* 63 Wash. 103, 114 Pac. 901.

The lower court correctly construed the statute in holding that the defendant Rathbun as state supervisor of game and game fish was permitted to exercise his discretion.

The judgment is therefore affirmed.

MACKINTOSH, C. J., MAIN, MITCHELL, and FULLERTON, JJ., concur.